(93 Misc. Rep. 275)

## PEOPLE v. CITY OF BUFFALO.

(Supreme Court, Trial Term, Albany County. January, 1916.)

1. STATUTES ⬅162—REPEAL OF SPECIAL STATUTES—IMPLICATION.
    Special statutes, local in application, are not deemed repealed by general legislation, except on the clearest showing of a legislative intent to that effect, and such repeal cannot ordinarily be accomplished by implication.

    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 235–237; Dec. Dig. ⬅162.]

2. FINES ⬅20—VIOLATION OF ORDINANCES—PROCEEDS—STATUTES—"ACT."
    The word "act," in the Motor Vehicle Law (Highway Law [Consol. Laws, c. 25] § 291, subd. 2), as amended in 1910 (Laws 1910, c. 374), providing that all fines, penalties, or forfeitures collected for the violation of any of the provisions of this article, or of any act in relation to the use of public highways by motor vehicles now in force or hereafter enacted, shall be paid to the treasurer of the state, refers to acts of the Legislature's own making, and not to ordinances or regulations made by local authorities, or even statutes having only a local application; and hence such act does not entitle the state to recover from the city of Buffalo fines and penalties collected by it for violations of ordinances regulating the use of motor vehicles within the city, particularly in view of the provisions of section 280 that article 11 (said Motor Vehicle Law) shall apply "except as herein otherwise expressly provided," and of section 288 that nothing contained in such article shall impair the validity or effect of any ordinance regulating the speed of motor vehicles.

    [Ed. Note.—For other cases, see Fines, Cent. Dig. §§ 23, 24; Dec. Dig. ⬅20.

    For other definitions, see Words and Phrases, First and Second Series, Act.]

3. MUNICIPAL CORPORATIONS ⬅105—STATUTES ⬅1—"ORDINANCE"—"ACT."
    The word "act" is the appropriate and usual word used in defining a bill after it has been enacted by the Legislature, while an "ordinance" is a rule, by-law, or regulation adopted by a municipal corporation, and is confined in its operation to the particular locality where it was adopted.

    [Ed. Note.—For other cases see Municipal Corporations, Cent. Dig. §§ 223, 224; Dec. Dig. ⬅105; Statutes, Cent. Dig. § 1; Dec. Dig. ⬅1.

    For other definitions, see Words and Phrases, First and Second Series, Ordinance.]

4. FINES ⬅20—PROCEEDS—CONSTRUCTION OF STATUTE—"EJUSDEM GENERIS" —MOTOR VEHICLE LAW—"ANY ACT."
    Under the rule of statutory construction known as the doctrine of "ejusdem generis"—i. e., of the same kind or class—the general words "any act," following the particular word "article," in the Motor Vehicle

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & indexes

Law (Highway Law, § 291, subd. 2), as amended in 1910, providing that all fines and penalties collected for violating any provisions of this "article or of any act" relating to the use of highways by motor vehicles now in force or hereafter enacted shall be paid to the treasurer of the state, clearly show that the Legislature intended thereby to designate a statute passed by itself.

[Ed. Note.—For other cases, see Fines, Cent. Dig. §§ 23, 24; Dec. Dig. ☜20.

For other definitions, see Words and Phrases, First and Second Series, Ejusdem Generis.]

Action by the People of the State of New York against the City of Buffalo to recover fines and penalties. Judgment for plaintiff for only part of its claim.

Egburt E. Woodbury, Atty. Gen., and Edward G. Griffin, Deputy Atty. Gen., for the People.

Melvin T. Bender, of Albany, amicus curiæ, for New York State Automobile Ass'n.

William S. Rann, Corp. Counsel, and Clayton M. Smith, both of Buffalo, for defendant.

CHESTER, J. By this action the plaintiff seeks to recover from the defendant the fines and penalties which have been collected since August 1, 1910, in the City Court of Buffalo for violation of the provisions of article 11 of the Highway Law, known as the Motor Vehicle Law (Laws 1909, c. 30 [Consol. Laws, c. 25] as amended by Laws 1910, c. 374), and also the fines and penalties collected in such court for the violation of various ordinances of the city of Buffalo and of the board of park commissioners of such city so far as they regulate the use of motor vehicles in such city. Subdivision 2 of section 291 of article 11 of such Highway Law provides that:

"All fines, penalties or forfeitures collected for violations of any of the provisions of this article or of any act in relation to the use of the public highways by motor vehicles now in force or hereafter enacted * * * shall be paid over * * * to the treasurer of the state."

The proof shows that the defendant has collected during the time covered by the complaint the sum of $3,335.50 in fines and penalties for the violation of the provisions of article 11 of the Highway Law which it has not paid to the state treasurer and the defendant has conceded upon this trial that it is liable for that amount. The proof also shows that the defendant has collected during such time, for violations of the park and traffic ordinances relating to the use of public highways by motor vehicles in the city, fines and penalties amounting to $17,832, which it has not paid to the state treasurer. The defendant insists that it owns these last-named moneys and that the provisions of section 291 of the Highway Law do not require the payment of the same to the state treasurer.

The city of Buffalo was given power by subdivision 9, section 17, of its charter (Laws 1891, c. 105), to enact ordinances "to prevent * * * the incumbering of the streets, alleys, etc. * * * to reg-

ulate the use of them, and to declare in what manner and for what purpose they shall not be used," and by subdivision 11 thereof to enact such ordinances, not inconsistent with the laws of the state, "as shall be deemed expedient for the good government of the city, the protection of its property, the preservation of peace and good order." Pursuant to such power various traffic ordinances regulating the use of the streets and public places and parks by motor and other vehicles have been enacted, which authorize the imposition of certain fines and penalties for the violation thereof.

There can be no question that by virtue of the provisions of section 11 of the Buffalo City Court Act (Laws 1909, c. 570), section 322 of title 11 of the Buffalo City Charter (Laws 1891, c. 105), and section 9 of chapter 3 of the ordinances of the city of Buffalo, unless the same have been repealed by the Motor Vehicle Law, such fines are the property of the defendant and are properly deposited with the city treasurer. The question presented here, therefore, is whether the provisions of the Motor Vehicle Law have been effective to repeal or modify these local acts and ordinances, so far as to require the payment of fines collected for the violation thereof to the state.

[1] The law is well settled that special statutes which are local in their application are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the Legislature to effect such repeal, and such repeal cannot ordinarily be accomplished by implication. Grimmer v. Tenement House Department, 204 N. Y. 370, 97 N. E. 884; Buffalo Cemetery Association v. City of Buffalo, 118 N. Y. 61, 22 N. E. 962; People v. Quigg, 59 N. Y. 83.

[2] The Motor Vehicle Law (Laws 1910, c. 374) contains the usual general repealing clause, which provides that all acts or parts of acts inconsistent with such act or contrary thereto are expressly repealed. There is no mention whatever of any specific local acts or ordinances being repealed, so that the repeal, if any, is by implication. It becomes necessary, therefore, to examine the statute itself with care, to see if we can gather therefrom whether or not there is shown any intent on the part of the Legislature in the passage of the Motor Vehicle Law to repeal the local statutes and ordinances, and to determine the meaning of the provision that "all fines, penalties or forfeitures collected for violations of any of the provisions of this article *or of any act* in relation to the use of public highways by motor vehicles now in force or hereafter enacted," shall be paid to the treasurer of the state. The claim of the plaintiff is that the insertion of the words "or of any act in relation to the use of the public highways by motor vehicles," following the words "for violations of the provisions of this article," shows a legislative intent to bring within the purview of the law fines collected under local laws or ordinances anywhere, and therefore that the defendant is liable for fines so collected in Buffalo. The defendant, on the other hand, insists that the fair meaning of the words quoted is that fines collected for violations of any of the provisions of article 11 or of any public act of the Legislature in relation to the use of the highways of the state by motor vehicles shall be paid to the state treasurer, and that the language is not broad enough

or sufficient to cover fines collected for violations of local statutes or ordinances.

[3] The usual rule of statutory construction requires that words and phrases used in statutes are to be given their ordinary and popular meaning. It cannot be doubted that the word "act" is the appropriate and usual one used in defining a bill after it has been enacted by the Legislature; in fact, that is the term used as the name for all legislative enactments. On the other hand, an ordinance, while it is given the force and effect of a statute, is a rule, by-law, or regulation adopted by a municipal corporation, and is confined in its operation to the particular locality where it is adopted. No citation of authorities is necessary in support of these elementary principles. It seems quite clear, therefore, that the Legislature used the term "act" in this statute with reference to acts of its own making, and not having in mind ordinances or regulations made by the local authorities, nor even statutes having only a local application. If the Legislature had desired to have the act broad enough to require the payment to the state treasurer of fines recovered for the violation of local ordinances, it would have been easy to have inserted words in the law to cover that intent, and it would not have stopped with the use of the word "act" alone.

[4] The general words "any act," following as they do the particular word "article," under another rule of statutory construction known as the doctrine of ejusdem generis—that is, of the same kind or class—show quite clearly that the Legislature intended thereby to mean a statute passed by itself. Lewis' Suth. Stat. Const. pars. 422- 448. That this is the correct construction of the law is made quite clear by later provisions of the same subdivision of such section 291. For instance, a judge, magistrate, or clerk of a court having jurisdiction "of the violation of any of the provisions of *this article*" is required to forward to the treasurer of the state a verified report of all criminal actions or proceedings instituted or tried "for violation of any of the provisions of *this article*," setting forth the nature of the offense and the fines and penalties collected, and the state treasurer is required to transmit to the Legislature a statement showing the amount of the "receipts" under *this article*. There is no requirement that magistrates or any one else shall make any report of any criminal actions or proceedings to the state treasurer, or any other state authority, for the violation of any local act or ordinance, or to report to the state treasurer the receipt of any fines arising from the violation of any such local act or ordinances. This omission is significant in arriving at the meaning of the statute, and shows quite clearly that the Legislature did not intend by the language employed earlier in the section, which has been quoted above, to interfere with the local authorities in collecting such fines for the benefit of their respective municipalities.

Perhaps some more detailed reference to the statute as a whole should fairly be indulged in, in construing the act in question. It is provided in section 280 with reference to the application of article 11 that:

"Except as herein otherwise expressly provided, this article shall be exclusively controlling: (1) Upon the registration, numbering and regulation of motor vehicles, and the licensing and the regulation of chauffeurs; (2) on their use of the public highways, and (3) on the accessories used upon motor vehicles and their incidents and the speed of motor vehicles upon the public highway; (4) on the punishment for the violation of any of the provisions of this article."

The provision that the article shall be exclusively controlling with reference to the use of motor vehicles on the public highways would be a strong argument in favor of the contention of the plaintiff, if it were not for the exceptions contained in the act. When we turn to section. 288, we find that it is there enacted that:

"*Except as herein otherwise provided,* local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner or chauffeur to whom this article is applicable any tax, fee, license or permit for the use of the public highways, or excluding any such owner or chauffeur from the free use of such public highways * * * and no ordinances, rule or regulation contrary to or in any wise inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any effect."

It is apparent by this language that the Legislature intended that the state should take entire jurisdiction over the matter so far as this provision extends. The prohibition of the enactment of local ordinances, however, is qualified by the important exceptions and provisions contained in the statute, which are somewhat crudely, but at great length, stated in the section itself. Among these numerous exceptions and provisions the following, for the purpose of illustration, may be mentioned:

It is provided that local ordinances may exclude motor vehicles from such driveway, speedway, or road as has been or may be expressly set apart by law for the exclusive use of horses and light carriages; it is also provided "that the power given to local authorities to regulate vehicles offered to the public for hire, and processions, assemblages or parades in the streets or public places, and all ordinances, rules and regulations which may have been or which may be enacted in pursuance of such powers shall remain in full force and effect." Local authorities may also "set aside for a given time a specified public highway for speed contests or races, to be conducted under proper restrictions for the safety of the public." They may also "exclude motor vehicles from any cemetery or grounds used for the burial of the dead, and may by a general rule, ordinance or regulation exclude motor vehicles used solely for commercial purposes from any park or part of a park system where such general rule, ordinance or regulation is applicable equally and generally to all other vehicles used for the same purposes."

Section 288 also contains the provision that nothing in article 11 contained "shall impair the validity or effect of any ordinances, regulating the speed of motor vehicles, or of any traffic regulations with regard to the operation of motor vehicles, heretofore · or hereafter made, adopted or prescribed pursuant to law in any city of the first class," of which Buffalo is one. There are also provisions that "the

local authorities of other cities and incorporated villages may limit by ordinance, rule or regulation the speed of motor vehicles on the public highways" within certain limitations and conditions mentioned in the section.

The local ordinances, for the violation of which the fines in question were collected, are, it seems to me, fairly within the exceptions contained in the Motor Vehicle Law, and for that reason remain in full force and virtue. There has been no claim on this trial that the acts constituting such violations could properly be charged as violations of the provisions of article 11 of the Highway Law, so that there is no question of the conflict between that law and the local ordinances to be discussed.

I am clearly of the opinion that, if the Legislature desired to reach out and bring into its treasury the fines collected for violation of these local ordinances, in the face of the usual measure of home rule in that respect which has heretofore obtained, it should do so by language that is free from any doubt. It is true the state needs money for the making and repair of highways; but the expense of state highways is no more in proportion than the expense which falls upon municipalities for maintaining their streets. They have to bear the expense of opening, paving, and maintaining their streets and public places, and also of a police force for the purpose of regulating traffic thereon. They also pay their proportion of the state taxes. If the public policy, which has heretofore obtained of permitting the municipalities of the state to have the fruits of their efforts to enforce local laws and ordinances, is to be changed by the Legislature, language should be employed in its enactments which clearly expresses that purpose. That has not been done in this case.

A judgment may be entered against the defendant for the recovery of the amount of fines collected by it for the violation of the provisions of article 11 only, with interest and costs.

Judgment accordingly.